IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| JACK R. YOUNGS, JAMES G. CORELL, WILLIAM R. MCDAVID, and MARGERET B. MCDAVID<br><br>    Plaintiffs,<br><br>vs.<br><br>JACK BEHNKEN, NANCY BEHNKEN, JOHN BEHNKEN, SANDI BEHNKEN, WILLIAM BEHNKEN, AMERICAN NUTRITION INC., a Utah Corporation; ROCKY MOUNTAIN MILLING LLC, a Utah Limited Liability Company; SOLAR ENGINEERING LTD., a Utah Limited Partnership,<br><br>Defendants/Counterclaim Plaintiffs,<br><br>vs.<br><br>JACK R. YOUNGS, JAMES G. CORELL, WILLIAM R. MCDAVID, MARGERET B. MCDAVID, and BOWLES RICE MCDAVID GRAFF & LOVE, a West Virginia Law Firm,<br><br>    Counterclaim Defendants. | ORDER ON MOTIONS TO CONFIRM AND VACATE ARBITRATION AWARDS<br><br><br><br><br><br><br><br>Case No. 1:04-CV-00183 PGC |

For years, the minority and majority shareholders of the close corporation American Nutrition, Inc., have battled over the value of the minority shareholders' interest. In December 2005, an arbitrator said that the value of a 12.75% minority interest in ANI was $7,514,679. The defendants, ANI's majority shareholders, now seek to vacate or modify the arbitrator's decision, while the plaintiffs — some of ANI's minority shareholders — ask the court to confirm it.

The court holds that vacatur is inappropriate because none of the grounds for vacatur specified in Utah Code Ann. § 78-31a-124 exist. The court also holds that the award should be modified to correct a computational error and reflect the actual amount of the plaintiffs' interests. Instead of the 12.75% stated in the decision, the plaintiffs actually own 11.45% of ANI. The court therefore modifies the award and orders ANI to purchase the plaintiffs' 11.45% ownership interests for $6,748,476.57.

## FACTUAL BACKGROUND

This dispute involves claims by some minority shareholders of American Nutrition, Inc., that the majority-shareholder defendants usurped ANI's corporate opportunities and transferred ANI's assets, all to plaintiffs' detriment. Defendant Jack Behnken is the president of ANI. He also owns several related companies. The plaintiffs' grievances relate to Mr. Behnken's alleged dealings between ANI and these other companies. Other defendants include Mr. Behnken's wife and three adult children — John, Sandi, and William — all of whom also owed ANI stock ("the Behnken parties").

From mid-2003 until late 2004, the minority shareholder plaintiffs attempted to resolve their disputes with the Behnken parties by mediation, agreeing that if that failed, they would

proceed to arbitration. In December 2004, after the Behnken parties attempted to rescind the memorandum of understanding that put in place the arbitration approach, the minority shareholder plaintiffs filed this case to compel the Behnken parties to arbitrate as they promised in the MOU.

In May 2005, all the parties to this lawsuit except the Bowles Rice law firm entered into a new arbitration agreement. The arbitrator was to determine the value of all the plaintiffs' shares, or 11.45% of ANI's stock, after which ANI was to purchase those shares for the specified price. The specifics of the arbitration agreement — which provided exceedingly broad discretion to the arbitrator — are discussed in greater detail below. The arbitrator was to issue a decision by October 17, 2005. The parties who signed this agreement then moved the court to stay this case pending the outcome of the arbitration. The court granted the motion and stayed the case.

In December 2005, all the parties to the arbitration agreement filed a joint status report and requested that the court continue the stay in this case. The arbitrator apparently had not yet completed his decision, but the parties expected that the decision would be issued by February 2006. The court continued the stay as requested.

When the status report was filed, the Behnken parties — Jack, Nancy, and their three adult children — were all represented by the same attorney. No party (through an attorney or otherwise) objected in this court to the continued stay. And the record indicates that as of December 15, 2005, no party had lodged any timeliness objections with the arbitrator.

On December 30, 2005, the arbitrator issued his decision. He ordered ANI to purchase 12.75% of its outstanding shares for $7,514,679. Soon after this decision, the defendants

objected to the award, claiming that it was untimely and was based on irrelevant financial data. The arbitrator denied the defendants' objections. The pending motions to confirm and vacate the award followed. And now, for the first time in this case, the three adult Behnken children have retained separate counsel from their parents, who filed an addition motion to vacate on their behalf. This case is properly before the court on diversity jurisdiction.

> **I.    Defendants Have Not Shown Any Basis Under Utah Law to Permit Vacatur of the Award.**

Under Utah law, which by contract governs this dispute, "'[a] trial court faced with a motion to vacate or modify an arbitration award is limited to determining whether any of the very limited grounds for modification or vacatur exist.'"[1] This narrow standard has been in place in Utah for several decades; as early as 1918, the Utah Supreme Court held that courts will not disturb arbitration awards "on account of irregularities or informalities, or because the court does not agree with the award, so long as the proceeding has been fair and honest and the substantial rights of the parties have been respected."[2] Indeed, the Utah Supreme Court has long emphasized that "[o]rdinarily a court has no authority to review the action of arbitrators to *correct errors* or to substitute its conclusion for that of the arbitrators acting honestly and within the scope of their authority."[3]

---

[1] *Pacific Development, L.C. v. Orton*, 23 P.3d 1035, 1037 (Utah 2001) (quoting *Buzas Baseball v. Salt Lake Trappers*, 925 P.2d 941, 946–47 (Utah 1996)).

[2] *Bivans v. Utah Lake Land, Water & Power Co.*, 174 P. 1126, 1130 (Utah 1918).

[3] *Giannopulos v. Pappas*, 15 P.2d 353, 356 (Utah 1932) (emphasis added).

One of the "very limited" statutory grounds for vacatur raised by all the defendants is that Mr. Heald "exceeded [his] authority."[4] "For a court reviewing an arbitration award to determine that an arbitrator exceeded his authority, a court must (1) review the submission agreement and determine that the 'arbitrator's award covers areas not contemplated by the submission agreement,' or (2) determine that the award is 'without foundation in reason or fact.'"[5] The court will examine each of these two grounds in turn.

A.   The Arbitrator Did Not Exceed His Powers.

The first way to show that an arbitrator exceeded his powers involves comparing the arbitration award with the arbitration agreement. Courts review the agreement "and determine whether the arbitrator's award covers areas not contemplated by the submission agreement" or, stated differently, "whether the arbitrator exceeded the powers delegated to him by the parties."[6]

The arbitration agreement here grants exceedingly broad authority to the arbitrator. It recites the minority shareholder plaintiffs' and Behnken parties' "desire to resolve by the procedure set forth herein all actual or potential claims that either of them (or any affiliated business entity) may have against the other (or any affiliated business entity), all of which issues are hereafter referred to as the 'Youngs / Behnken Controversy.'"[7] This sweeping language

---

[4] Utah Code Ann. § 78-31a-124(1)(d) (2002).

[5] *Softsolutions, Inc. v. Brigham Young Univ.*, 1 P.3d 1095, 1100 (Utah 2000) (quoting *Buzas*, 925 P.2d at 950).

[6] *Buzas*, 925 P.2d at 949 (quotation marks omitted).

[7] Mem. in Supp. of Pls.' Mot. to Confirm Arbitration Award (Doc. # 54), Ex. A., at 1 (hereinafter "Arbitration Agreement").

brought all conceivable disputes between the minority shareholder plaintiffs, the Behnken parties, and any of their affiliated business entities — not just those specifically related to ANI, the named business entity that is a party in this case — within the arbitrator's purview.

The agreement also gave the arbitrator virtually unlimited discretion as to how he reached his decision. He could hire assistants, and the signing parties expressly waived objections to him doing so.[8] He had "complete discretion as to the procedures to be followed in the arbitration," so long as the parties were "given an opportunity to submit their positions and any supporting documentation or evidence in writing."[9] And he could base his decision "on any evidence [he] chooses to rely upon, which may include but not be limited to financial records of ANI, financial records related to the Youngs / Behnken Controversy, and *any other evidence* provided by the Parties."[10]

The agreement states that the arbitrator could base his decision on factors "includ[]ing] but . . . not limited to assets of, and transfers among, the Behnken parties *and related companies they control*, as well as any capital contributions, advances, loans, etc. from or by any of the Behnken Parties or related companies."[11] It also provides that the decision would "set forth the value of the minority shares as of a date that [the arbitrator] determines to be appropriate under

---

[8]*Id.* at 2, ¶ 4.

[9]*Id.* ¶ 5.

[10]*Id.* ¶ 7 (emphasis added).

[11]*Id.* ¶ 8 (emphasis added).

the circumstances"[12] and that ANI would "purchase all shares owned by the Minority Shareholders within thirty days"[13] at "the price established by the arbitrator."[14]

Given this virtually unlimited grant of authority, the defendants' claims that the arbitrator exceeded his authority are simply implausible. The way the arbitrator reached his decision, the factors upon which it was based, and the result the decision mandates (buying the minority shares) all fall comfortably within the arbitrator's contractual authority.

The defendants' most plausible argument that the arbitrator exceeded his authority relates to the decision's timing. The agreement states that the decision should have been rendered "no later than the week of October 17, 2005."[15] The arbitrator, however, did not issue his decision until about ten weeks later — December 30, 2005 — and did not sign it until January 18, 2006.[16] At first blush, these facts arguably show a timeliness issue. The defendants' actions, however, demonstrate that they were comfortable with the pace of decisionmaking. Specifically, Jack Behnken and Ron Haws met with the arbitrator on Sunday, October 30, 2005. Nothing in the record indicates that they objected to this meeting even though it clearly was outside the specified deadline. Instead, the record shows that the parties were actively working with the arbitrator during the months of November and December — even though the October 17 deadline had long

---

[12] *Id.* ¶ 9.

[13] *Id.* ¶ 10.

[14] *Id.* at 1.

[15] *Id.* at 2, ¶ 6.

[16] Mem. in Supp. of Pls.' Mot. to Confirm Arbitration Award (Doc. # 54), Ex. H., at 1 (hereinafter "Decision").

since passed — to help him reach his decision.[17]  And the Behnken parties, including the children, did not object after the court granted the December 15, 2005, joint motion to continue the stay, which was filed for the express purpose of permitting the arbitration to conclude.

There is no indication that any party objected to the untimeliness of the award until *after* it was delivered on December 30.  Under Utah law, such objections are untimely.  By statute, "[a] party waives any objection that an award was not timely made unless the party gives notice of the objection to the arbitrator *before* receiving notice of the award."[18]  The obvious rationale for this rule is to avoid creating an illusory arbitration, in which a disappointed party can simply cry "out of time" as a basis for vacating a disappointing award.  As the Utah Supreme Court said in a similar case, "having permitted the proceedings to go forward to conclusion without lodging a protest, [the defendants are] deemed to have waived any objection of timeliness."[19]  And it is of no consequence that the arbitrator did not sign the award until January 18, 2006, after he received post-December 30 objections.  Under Utah law, "an arbitration award will not be disturbed on account of irregularities or informalities.  Failure to comply with procedural requirements such as the signature requirement is an irregularity and as such cannot by itself support appellate intervention."[20]

---

[17]*See id.* Ex. E & F.

[18]Utah Code Ann. § 78-31a-120(2) (2002) (emphasis added).

[19]*Utility Trailer Sales of Salt Lake, Inc. v. Fake*, 740 P.2d 1327, 1331 (Utah 1987).

[20]*Allred v. Educators Mut. Ins. Ass'n of Utah*, 909 P.2d 1263, 1265–66 (Utah 1996) (quotation marks and citation omitted).

Finally, the Behnken children argue that the award must be vacated because they were never given an opportunity to submit evidence to the arbitrator. This contention is unfounded. Each of the Behnken children signed the arbitration agreement on May 26, 2005. The arbitration decision was not rendered until December 30, 2005, more than seven months later. During that time, their father met with the arbitrator and presented evidence in support of their unified position. Had they so desired, the children could have submitted additional evidence to the arbitrator at any time during those seven months. That they chose not to do so does not mean that they were in any way denied the opportunity to do so or that the arbitrator exceeded his powers.

The Behnken children also claim that they were "without notice" of the arbitration proceedings. This claim defies credence, as they were well aware of what was transpiring. One of many indications of this fact is a motion filed with this court on December 15, 2005, requesting a further stay of proceedings. That motion — though filed by the attorneys for defendant American Nutrition — represented that all parties, including specifically the Behnken children,[21] were requesting a continued stay of the proceedings so that the arbitrator could complete his decision. Obviously, the children were fully aware of the arbitration.

In sum, the arbitrator did not exceed his powers in this case. He performed the task delegated to him (assigning a value to the minority shares and ordering their purchase) in a manner specifically allowed by the agreement. And though the arbitrator did not render his

---

[21] Through some apparent typographical error, Sandi Behnken's name was omitted from the list of parties submitting the motion. John Behnken and William Behnken were both listed in the motion. Since the children had not at that point secured separate counsel, the omission of Sandi's name appears to be an inadvertent oversight.

decision precisely within the time specified, the parties waived any objection to the award's timeliness because they did not object before the arbitrator released his decision.

      B.      The Award Is Not Without Foundation in Reason or Fact.

The second way to prove that an award should be vacated is to show that it is "completely irrational."[22] "In other words, an award may not stand if it does not meet the test of fundamental rationality."[23] "[I]n considering" whether an arbitrator exceeded his authority in this way, "courts must approach this allegation cautiously, for, although the complete irrationality of an award is a basis for setting it aside, the irrationality principle must be applied with a view to the narrow scope of review in arbitration cases."[24]

A plain reading of the arbitration agreement reveals that the award in this case was rational. The agreement explicitly gave the arbitrator authority to value the minority shares based "on any evidence [he] chooses to rely upon, which may include but not be limited to financial records of ANI, financial records related to the Youngs / Behnken Controversy, and any other evidence provided by the Parties."[25] The Youngs / Behnekn Controversy, of course, included "all actual or potential claims that either of them (*or any affiliated business entity*) may have against the other (*or any affiliated business entity*)."[26] Thus, even if the arbitrator based his decision in

---

[22]*Buzas*, 925 P.2d at 950 (quotation marks omitted).

[23]*Id.* (quotation marks omitted).

[24]*Id.* (quotation marks omitted).

[25]Arbitration Agreement, at 2 ¶ 7.

[26]*Id.* at 1.

part on financial data from other companies with which the plaintiffs or the defendants were involved, he had contractual authority to do so. The award therefore was not irrational.

### II. The Award Should Be Modified to Reflect the Proper Ownership Percentage at Stake.

In addition to arguing that the award should be vacated, plaintiffs also argue that it should be modified. The statutory grounds for modifying an arbitration award are found in Utah Code Ann. § 78-31a-125. The specific ground invoked here is that the arbitrator made "an evident mistake in the description of . . . property referred to in the award."[27] The defendants claim that the award incorrectly orders ANI to purchase 12.75% of its minority ownership rather than the 11.45% minority ownership owned by the plaintiffs and specified in the agreement.

The plaintiffs admit that the arbitrator's decision "should be modified by the Court to reflect an amount proportionate to 11.45% (the total of shares owned by the plaintiffs)."[28] This modification would reduce the amount ANI must pay from $7,514,679 to $6,748,476.57.

Based on this admission and record evidence, the court finds that a condition for modification under § 78-31a-125(1)(a) exists because the arbitrator made an evident mistake in the proper description of the property referred to in the award. The correct ownership percentage at stake was 11.45%, not 12.75%. The court therefore MODIFIES the award and reduces to $6,748,476.57 the amount ANI must pay for the plaintiffs' 11.45% ownership interest. This error

---

[27] Utah Code Ann. § 78-31a-125(1)(a) (2002).

[28] Pls.' Mem. in Opp'n to Mots. of American Nutrition, Inc., Jack Behnken, and Nancy Behnken to Vacate Arbitration Award & Reply Mem. in Supp. of Pls.' Mot. to Confirm Arbitration Award (Doc. # 77-1), at 26 (Apr. 13, 2006).

was, however, merely a computational error, and does not undermine the arbitrator's decision as a whole.

## CONCLUSION

The court MODIFIES the arbitration award to reflect that the plaintiffs' ownership interest of ANI is 11.45%, not 12.75%. ANI must therefore pay $6,748,476.57 for plaintiffs' shares, not the greater dollar value specified in the award. The court CONFIRMS the award in all other respects. As such, the pending motions to vacate and confirm (# 53, 62, 65, 68) are all GRANTED IN PART and DENIED IN PART. The court DENIES AS MOOT the motion to strike the declaration of Ron Haws (# 74); this declaration played no part in the court's decision. The court also DENIES the Behnken Children's motion for attorney fees, as no good cause has been shown given the disputes that have arisen in this case (# 83).

SO ORDERED.

DATED this 9th day of August, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge